IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANNAMALAI ANNAMALAI,

                         Petitioner,

  v.                                                OPINION and ORDER

WARDEN EMMERICH,                         24-cv-205-jdp

                         Respondent.

---

Petitioner Annamalai Annamalai has an extensive history of abusive litigation in federal and state courts. Annamalai is now incarcerated at FCI Victorville Medium II, but he was housed at FCI Oxford when he brought this action. Annamalai is seeking restoration of 103 days of good-conduct time based on allegations that Bureau of Prisons officials denied him procedural due process during disciplinary proceedings, and he is proceeding without counsel. In response to the court's order to amend, Dkt. 3, Annamalai brings an amended petition under 28 U.S.C. § 2241. Dkt. 6. Respondent answered the amended petition, and Annamalai submitted a reply. Dkt. 25 and Dkt. 44.

The evidence shows that, while incarcerated, Annamalai attempted to file two involuntary bankruptcy petitions in which he falsely declared under perjury that the subject of each petition owed him tens of millions of dollars and had consented to that debt. Annamalai received ample notice of the disciplinary charges based on this conduct, and he had an opportunity to contest each charge at a disciplinary hearing. The disciplinary record shows that Annamalai received all the process he was due. I will deny the petition.

I will also rule on Annamalai's other pending motions. I will also impose sanctions on Annamalai because the record shows that he intentionally made a dishonest statement in his amended petition.

BACKGROUND

A.  **Annamalai's federal conviction**

Annamalai, who claims to be Hindu high priest, ran the Hindu Temple and Community Center of Georgia, Inc. in Norcross, Georgia from 2005 to 2009. *United States v. Annamalai*, No. 20-10543, 2022 WL 16959207, at *1 (11th Cir. Nov. 16, 2022). "The Hindu Temple generated income in part by charging fees for religious and spiritual products and services, including religious ceremonies and horoscopes." *Id.* Annamalai used the Hindu Temple as part of a criminal scheme to defraud his followers and commit bank fraud. *Id.* Specifically, Annamalai made unauthorized transactions on his followers' credit cards and, if they complained, he would cite to the temple's "no refund" policy. *Id.* Annamalai also submitted false documents and information to banks and law enforcement to justify the fraudulent charges. *Id.* The Hindu Temple filed for Chapter 11 bankruptcy in 2009 and the bankruptcy trustee closed the temple. *Id.*

Based on this and other conduct, Annamalai was convicted in the Northern District of Georgia of bank fraud, conspiracy to commit bank fraud, filing a false federal income tax return, making a false statement in writing, obstruction of justice, and making a false statement under oath in a bankruptcy proceeding. *See id.; Annamalai v. Emmerich*, No. 24-cv-678-jdp, 2024 WL 4625803, at *1 (W.D. Wis. Oct. 30, 2024) ("*Annamalai I*"). Annamalai's judgment of conviction provided that he must refrain from filing any frivolous, abusive, or malicious

2

lawsuits against victims of his criminal schemes and individuals involved in the Hindu Temple's bankruptcy case. *United States v. Annamalai*, 13-cr-437 (N.D. Ga.), Dkt. 355 at 2. After some of his convictions were reversed on appeal, Annamalai was resentenced to 216 months' imprisonment followed by five years' supervised release. *United States v. Annamalai*, No. 21-13002, 2023 WL 316019, at *1 (11th Cir. Jan. 19, 2023) (*"Annamalai II"*). The reversal of Annamalai's convictions did not affect the original judgment's condition against frivolous lawsuits. *See Annamalai*, 13-cr-437, Dkt. 982 at 3. Annamalai has a projected release date of October 12, 2028.

During Annamalai's resentencing hearing, the court found that he had filed "numerous frivolous and vindictive lawsuits and involuntary bankruptcy petitions against victims, witnesses, and others." *Annamalai II*, 2023 WL 316019, at *3; *see also In re Hindu Temple & Cmty. Ctr. of Georgia, Inc.*, 502 B.R. 881, 889 (Bankr. N.D. Ga. 2013) ("Mr. Annamalai has a 'knee-jerk' propensity to file lawsuits against those who oppose him."). Specifically, Annamalai brought several frivolous actions against Teresa Louis, a victim in his criminal case. *See Chinnathambi v. Cwalina*, No. 10-cv-2830, 2013 WL 12239521, at *5 (N.D. Ga. Aug. 7, 2013), *report and recommendation adopted*, 2013 WL 12239555 (N.D. Ga. Sept. 5, 2013); Dkt. 26-8 at 31–32.

**B. State-law breach-of-contract action filed while in custody**

In April 2017, while in federal custody, Annamalai brought a breach-of-contract action in Vigo County, Indiana against a sole private defendant, Vishal Kalyani. *See* docket sheet in Vigo County (Ind.) Superior Court case no. 84D02-1704-MI-2768.[1] Apparently, Annamalai

---

[1] *Available at* https://public.courts.in.gov/mycase/#/vw/Search.

3

based his breach-of-contract claim on allegations that, "after he was convicted more than a decade ago, at least 169 persons and entities looted and or sold, transferred, and absconded with property that [Annamalai] alleges he owned." *Annamalai v. Montgomery Cnty. Treasurer* ("*Annamalai III*"), No. 24-cv-268, 2024 WL 4599935, at *4 (S.D. Ohio Oct. 29, 2024), *report and recommendation adopted*, 2024 WL 4881269 (S.D. Ohio Nov. 25, 2024).

In November 2020, Annamalai obtained a purported "final order of specific performance," which "consists of [Annamalai's own] handwritten orders" that were apparently signed by special judge Charles D. Bridges. *See id.*; *see also* Dkt. 44-16 at 2–3. From what I can discern, the basis of the final order of specific performance is the alleged failure of numerous "account debtors," who Annamalai alleges stand "in privity" with Kalyani, to respond to Annamalai's non-party discovery requests, which he says he made in May 2017. *See Annamalai III*, 2024 WL 4599935, at *4–5; *Annamalai I*, 2024 WL 3694446, at *1; Dkt. 8-9; Dkt. 8-10. Annamalai alleges that the "account debtors" include BOP officials. *Annamalai I*, 2024 WL 3694446, at *1; *see* Dkt. 44-17 at 4–8. Even though Judge Bridges apparently signed it, the final order of specific performance has been described by courts as "extraordinarily odd" and "nonsensical." *Annamalai III*, 2024 WL 4599935, at *4. There's no clear indication that any "account debtor" received notice of the Vigo County case. *See Annamalai III*, 2024 WL 4599935, at *5; *see* Dkt. 44-17 at 4–8.

C.  **Incident reports and disciplinary hearings**

While incarcerated at USP Marion, Annamalai received incident reports 2890317 and 2892829, which charged him with using the mail for an illegal purpose, i.e., to file fraudulent bankruptcy petitions. *See* 28 C.F.R. § 541.3, Table 1, Prohibited Act Code 196.

4

### 1. The '317 incident report

On August 30, 2016, Annamalai received the '317 incident report, which was prepared by Stephen Cope. Dkt. 26-8 at 8. Cope wrote that, on August 19, 2016, Annamalai attempted to file an involuntary bankruptcy petition against Teresa Louis, a victim and witness in his criminal case, falsely declaring that Louis owed him $54 million and had agreed to that debt. *Id.* Cope also wrote that the Annamalai declared under penalty of perjury that the information in the petition was true and correct, and further acknowledged that he could be prosecuted under 18 U.S.C. § 152 if he knowingly made a false statement in the petition. *See id.* at 8, 27. D. Lockridge documented that he delivered the '317 report to Annamalai that day. *Id.* at 8–10.

On September 2, 2016, Annamalai acknowledged receiving "Notice of Discipline Hearing" and "Inmate Rights at Discipline Hearing" forms. *Id.* at 11–12. That day, the unit disciplinary committee chairman, G. Burgess, referred the '317 report to the disciplinary hearing officer, G. Crews, due to the seriousness of the charge. *Id.* at 8.

Annamalai's disciplinary hearing was held on March 31, 2017. Dkt. 26-9 at 1. T. Stewart served as his staff representative. *Id.* Annamalai asked to present as witnesses Cope, two federal government attorneys, the dean of a law school, and a postal inspector. *Id.* at 2. Crews denied this request, concluding that the information that Annamalai sought to elicit from these individuals was "not directly relevant to the charge" and amounted to "general information" that he would consider when issuing a decision. *Id.*

Annamalai principally argued that he was not guilty of the charge because: (1) he has a right of access to the courts; (2) he was not convicted of a crime based on his filing of the bankruptcy petition; and (3) a federal case established that Louis breached a contract and owed

5

him a debt because Louis failed to respond to his requests for admissions in that case. *See id.* at 1, 3–6 (citing *Annamalai v. Sivanadiyan*, 17-cv-25 (S.D. Tex.)).

Crews found that Annamalai committed the act as charged. *Id.* at 2, 6. Crews explained that: (1) the discovery document from the Southern District of Texas case was dated January 3, 2017, which came after Annamalai filed the bankruptcy petition against Louis; (2) the right of access to the courts doesn't include the right to file false bankruptcy petitions; (3) Annamalai submitted no evidence showing that Louis owed him $54 million; and (4) Annamalai had a history of abusive litigation, and his judgment of conviction precluded him from bringing abusive lawsuits against victims of his crimes. *See id.* at 6–7. C. Swift documented that Annamalai received a copy of Crews's decision. *Id.* at 9.

2. **The '829 incident report**

On September 7, 2016, Annamalai received the '829 incident report, which was prepared by Cope. Dkt. 26-6 at 4. Cope wrote that, on August 29, 2016, Annamalai attempted to file an involuntary bankruptcy petition against the former director for the Trustee Program for the U.S. Department of Justice, Clifford J. White. *Id.* Cope also wrote that Annamalai falsely declared in the petition that White owed him $310 million and had agreed to that debt. Furthermore, Cope wrote that White told BOP officials that he had no obligation to Annamalai and did not agree to that debt. *Id.* Cope explained that Annamalai's petition appeared to violate § 152, 18 U.S.C. § 157, 18 U.S.C. § 1341, and the judgment of conviction in Annamalai's criminal case. *Id.* J. McMillon and Crews documented that Annamalai received a copy of the '829 report that day and again nine days before his disciplinary hearing. *Id.* at 6; Dkt. 26-7 at 1.

On September 8, 2016, Annamalai acknowledged receiving "Notice of Discipline Hearing" and "Inmate Rights at Discipline Hearing" forms. Dkt. 26-6 at 7, 9. That day, Burgess referred the '829 report to Crews due to the seriousness of the charge. *Id.* at 4.

Annamalai's disciplinary hearing for the '829 report was also held on March 31, 2017. Dkt. 26-7 at 1. Stewart represented Annamalai in the second hearing. *Id.* Many of the issues were similar to the issues in the first hearing. Annamalai asked to present the same witnesses. *Id.* at 2. Crews denied this request for the same basic reasons. *Id.*

Annamalai principally argued that he was not guilty of the charge because: (1) he has a right of access to the courts; (2) he was not convicted of a crime based on his filing of the bankruptcy petition against White; and (3) a Southern District of Indiana case established that White breached a contract and owed him a debt because White failed to respond to his requests for admissions in that case. *See id.* at 1, 4–5 (citing *Annamalai v. Sivanadiyan*, 16-cv-3415 (S.D. Ind.)).

Crews found that Annamalai committed the act as charged. *Id.* at 2–3. Crews explained that: (1) Annamalai submitted no evidence showing that White owed him $310 million; (2) White declared that he had no relationship with Annamalai and did not owe him any money in his personal or official capacity; (3) the discovery document from the Southern District of Indiana case was dated December 20, 2016, which came after Annamalai filed the bankruptcy petition against White; (4) the right of access to the courts doesn't include the right to file false bankruptcy petitions; and (5) Annamalai has a history of abusive litigation, and his judgment of conviction precluded him from bringing abusive lawsuits against government officials involved in his criminal case or the temple's bankruptcy case.

7

*See id.* at 6–7. C. Swift documented that Annamalai received a copy of Crews's decision. *Id.* at 9.

ANALYSIS

A. **Preliminary matters**

Three preliminary motions are pending. In the first motion, Annamalai asks for: (1) an emergency status hearing and oral argument; (2) a copy of the docket sheet; and (3) copies of orders entered since October 2024. Dkt. 48.

In the second motion, Annamalai moves the court to correct the amended petition to reflect that he seeks restoration of 103 days of good-conduct time, not 130 days. Dkt. 50. This motion is granted.

In his third motion, Annamalai acknowledges receipt of a docket sheet from the clerk's office and withdraws the second and third requests from the first motion. Dkt. 51. That leaves Annamalai's first request for a status hearing and oral argument, which I will deny. The request for a status hearing is now moot. Oral argument is not appropriate because, as explained below, the paper record conclusively shows that Annamalai's amended petition lacks merit. An evidentiary hearing is not warranted for the same reason. *See* Dkt. 14, 32, 46.

B. **Merits of the amended petition**

Annamalai challenges his disciplinary sanctions stemming from the '317 and '829 incident reports on mostly the same grounds. *See* Dkt. 6; Dkt. 7; Dkt. 44. Annamalai contends that BOP officials denied him procedural due process during both disciplinary proceedings, primarily because: (1) Annamalai didn't receive a copy of the incident reports; (2) Crews did not allow him to call his proposed witnesses; (3) Lockridge and McMillon failed to interview

Annamalai's proposed witnesses and obtain evidence; (4) no competent evidence supported the guilty findings, primarily because Louis and White are "account debtors" based on the final order of specific performance in the Vigo County case; (5) BOP officials denied Annamalai his right to access the courts; (6) Annamalai did not receive meaningful representation from Stewart; and (7) Annamalai did not receive an adequate unit disciplinary committee hearing. *See* Dkt. 6 at 3–4; Dkt. 7 at 1–3; Dkt. 44 at 5. Annamalai also contends that the incident reports were retaliation based on his filing of grievances against BOP officials, and that Lockridge sexually assaulted him. Dkt. 7 at 2; Dkt. 44 at 3.

As a general rule, due process requires prisoners in disciplinary hearings to receive: "(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence . . . ; and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). "[S]ome evidence" must support Crews's decisions. *Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Smith v. Bezy*, 141 F. App'x 479, 481 (7th Cir. 2005).

Annamalai hasn't developed any argument on the second requirement and, on the fourth requirement, the evidence is that Annamalai received copies of Crews's decisions. Dkt. 26-7 at 9; Dkt. 26-9 at 9. My analysis is limited to the first and third requirements, and to whether some evidence supported Crews's decision.

On the first requirement, advanced notice, the evidence is that the '317 incident report was delivered to Annamalai on August 30, 2016, and that the '829 incident report was delivered to him on September 7, 2016, and again nine days before his disciplinary hearing. Dkt. 26-6 at 6; Dkt. 26-7 at 1; Dkt. 26-8 at 8–10. Annamalai acknowledged receiving the

9

notice of discipline and inmate rights forms for each incident report in early September 2016. Dkt. 26-6 at 7, 9; Dkt. 26-8 at 11–12. Annamalai's disciplinary hearings took place months later in late March 2017. The evidence shows that Annamalai received ample advanced written notice of the disciplinary charges.

On the third requirement, Annamalai received an opportunity to call witnesses and present documentary evidence. Regarding the right to present documentary evidence, Annamalai presented considerable documentary evidence at both disciplinary hearings. *See* Dkt. 26-7 at 2–7. Dkt. 26-9 at 2–7. Annamalai contends that Lockridge and McMillon failed to obtain additional evidence, but he does not describe the evidence or explain how they failed to obtain it. *See Garlotte v. Fordice*, 515 U.S. 39, 46 (1995) ("[T]he habeas petitioner generally bears the burden of proof[.]"). Prisoners "are entitled to have *exculpatory* evidence disclosed unless its disclosure would unduly threaten institutional concerns." *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) (emphasis added). But Annamalai did not request exculpatory evidence. Dkt. 26-7 at 6; Dkt. 26-9 at 6. Annamalai hasn't shown a violation of his right to present documentary evidence.

I turn to the right to call witnesses. The rule that a prisoner has a right to call witnesses at a prison disciplinary hearing is not absolute. Prison officials have discretion to refuse to allow witnesses for "irrelevance" or "lack of necessity." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).

Crews denied Annamalai's request to present witnesses based on lack of relevance and necessity. Crews found that the information Annamalai sought to elicit from these individuals was "not directly relevant to the charge" and amounted to "general information" that he would consider when issuing a decision. Dkt. 26-7 at 1; Dkt. 26-9 at 1. From what I can discern, Annamalai mainly sought to present these witnesses to bolster his argument that the

involuntary bankruptcy petitions against Louis and White didn't support criminal charges. But Annamalai made this argument during both hearings, and he hasn't explained how any proposed witness would have strengthened it. The legal points that Annamalai wanted the witnesses to make (e.g., what certain criminal statutes provide) amounted to general information, and the points mostly lacked relevance because the disciplinary hearings were administrative proceedings. *See* Dkt. 26-7 at 2, 6–7; Dkt. 26-9 at 2, 6; *cf. Hill*, 472 U.S. at 456 ("Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context."). Annamalai hasn't shown that Crews abused his discretion in denying the proposed witnesses. For the same basic reasons, there's no merit to Annamalai's contention that Lockridge and McMillon denied him due process by failing to interview his proposed witnesses.

The next issue is whether "some evidence" supported Crews's decisions. The "some evidence" requirement is quite lenient; sanctions imposed in a prison disciplinary hearing are subject to the "narrowest judicial review." *See United States v. Kizeart*, 505 F.3d 672, 675 (7th Cir. 2007). The issue is whether there is any evidence in the record, even just a "modicum," that could support the hearing officer's decision. *Hill*, 472 U.S. at 455–56. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455.

This lenient standard was easily satisfied here. Annamalai had a history of abusive litigation against individuals involved in his criminal prosecution and bankruptcy cases, including Louis specifically. Annamalai attempted to file involuntary bankruptcy petitions against Louis and White, declaring under penalty of perjury that they owed him many millions

11

of dollars and had consented to the debts. Annamalai could not plausibly explain the source of the enormous debts allegedly owed to him. Annamalai's main explanation was that he had obtained final orders of specific performance against Louis and White in two federal civil cases. That explanation, as Crews found, was dishonest. Louis and White were not defendants in those cases, neither of which was resolved in Annamalai's favor. *See Annamalai*, 17-cv-25 (S.D. Tex.), Dkt. 14 and Dkt. 43; *Annamalai*, 16-cv-3415 (S.D. Ind), Dkt. 13. Annamalai explained that Louis and White failed to answer his discovery requests, but Annamalai prepared those requests after he filed the involuntary bankruptcy petitions against Louis and White; the requests could not have provided a good-faith basis for either petition.

Annamalai's amended habeas petition illustrates continued dishonesty. Annamalai shifts his position in his amended petition, contending that the final order of specific performance in the Vigo County case established Louis's and White's debts. But that order, which is highly odd, was entered more than four years after Annamalai attempted to file the involuntary bankruptcy petitions. Annamalai explains that he made the unanswered non-party discovery requests that led to the Vigo County final order of specific performance in May 2017, but that date fell several months after Annamalai attempted to file the bankruptcy petitions.

Crews had a strong basis to find that Annamalai's filing of those petitions involved illegal conduct. It is unlawful to "knowingly and fraudulently make[] a false declaration, certificate, verification, or statement under penalty of perjury . . . in or in relation to" an involuntary bankruptcy proceeding. *See* 18 U.S.C. § 152(3). It is also unlawful to "make[] a false or fraudulent representation, claim, or promise concerning or in relation to [an involuntary bankruptcy petition], at any time before or after the filing of the petition." *See id.* § 157(3). In addition, Crews had a strong basis to find that Annamalai had violated a

12

condition of his judgment of conviction, which provides that he must refrain from filing any frivolous, abusive, or malicious lawsuits against victims of his criminal schemes and individuals involved in the Hindu Temple's bankruptcy case.

Procedural due process does not protect the other rights that Annamalai contends he was denied during his disciplinary proceedings. Annamalai says that Stewart failed to provide meaningful representation, though the disciplinary hearing record shows that Stewart took several steps to assist Annamalai in his defense. *See* Dkt. 26-7 at 2; Dkt. 26-9 at 2. But even if Stewart's representation fell short, there's no constitutional entitlement to the assistance of a staff representative in prison disciplinary proceedings if the prisoner is literate and the case is not complex. *See Wolff*, 418 U.S. at 570; *Aguilar v. Endicott*, 224 F. App'x 526, 528 (7th Cir. 2007). Annamalai, a prolific litigator, is literate, and the issues in his disciplinary proceedings were not complex. Annamalai also contends that he received an inadequate unit disciplinary committee hearing. But there's no due process entitlement to a unit disciplinary committee hearing. *See Obiegbu v. Werlinger*, 488 F. App'x 585, 586 (3d Cir. 2012); *Brown v. Rios*, 196 F. App'x 681, 683 (10th Cir. 2006); *Alcorn v. Daniels*, No. 16-cv-418, 2019 WL 4735831, at *3 (S.D. Ill. Sept. 27, 2019). I will deny the petition on Annamalai's procedural due process claim.

Annamalai's three remaining contentions lack merit. First, Annamalai contends that BOP officials denied him his right of access to the courts. But, for this right to apply, the lawsuit must be nonfrivolous and fall "within the category of actions (civil rights actions or attacks on his conviction or sentence) protected by the right to access courts." *Al Ghashiyah v. Wis. Parole Comm'n*, No. 06-3677, 2007 WL 2140596, at *3 (7th Cir. July 26, 2007). Annamalai's frivolous involuntary bankruptcy petitions are not protected by the right of access. *See In re*

*Kelly*, 392 B.R. 750, 758 (W.D. Wis. 2007) ("[T]here is no independent constitutional right of access to the bankruptcy courts.").

Second, Annamalai contends that the incident reports were retaliation based on his filing of grievances against BOP officials. I will not consider this contention because Annamalai raised it for the first time in his reply brief. *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). Besides, regardless of retaliatory motive, Annamalai couldn't prevail on a retaliation claim based on either incident report because, as my analysis shows, the reports were given for legitimate reasons. *See Brown v. Phillips*, 801 F.3d 849, 855 (7th Cir. 2015).

Third, Annamalai alleges that Lockridge sexually assaulted him. I will not consider this allegation; it amounts to a challenge to Annamalai's conditions of confinement and must be brought, if at all, in a civil rights action. *See Glaus v. Anderson*, 408 F.3d 382, 386 (7th Cir. 2005). Even if I could consider this allegation, it would not warrant any relief because it is wholly conclusory. *See Garlotte*, 515 U.S. at 46; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## SANCTIONS

A district court has the inherent power to sanction a party for abuse of the judicial process. *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018). Dismissal of a case is an appropriate sanction if a party intentionally makes a false statement to the court to attempt to gain a litigation advantage. *See Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015); *Ayoubi v. Dart*, 640 F. App'x 524, 528–29 (7th Cir. 2016).

As I've explained above, Annamalai's statement that the Vigo County final order of specific performance shows that Louis and White owe him staggering debts is dishonest. Annamalai attempted to file the involuntary bankruptcy petitions against Louis and White in

14

August 2016. But the unanswered non-party discovery requests that Annamalai says led to the Vigo County order were made later, in May 2017, and the order itself wasn't entered until much later, November 2020. These events occurred well after Annamalai brought the bankruptcy petitions, so they could not have created the debts alleged in the petitions.

Annamalai intentionally made this false statement. Annamalai made substantially similar statements in his disciplinary proceedings about the Southern District of Texas and Southern District of Indiana cases, asserting that discovery documents in those cases showed that Louis and White owed him lofty debts. Crews found that Annamalai's statements were dishonest. Crews explained that the discovery documents could not have created the debts because the requests were made after Annamalai attempted to bring the involuntary bankruptcy petitions against Louis and White. Annamalai's statement about the Vigo County case is highly similar, which provides additional support for my finding that he intentionally sought to deceive the court by making it. I expect all litigants to be scrupulously honest in their statements to the court. Making an intentionally false statement to gain a litigation advantage is grave insult to the integrity of the court and the judicial process. This case is merely the latest in a long pattern of dishonesty and abuse of the court system.

A severe sanction is warranted.

I would dismiss this case as a sanction for Annamalai's dishonesty. But I'm dismissing it on the merits anyway. So this sanction merely provides an alternative basis for dismissal.

I will also dismiss Annamalai's other pending cases in this district, of which there is currently only one: *Annamalai v. Emmerich*, 25-cv-533-jdp. The '533 case is currently closed because Annamalai voluntarily dismissed it. But Annamalai moves in that case to withdraw his notice of voluntary dismissal and, giving him the benefit of the prison mailbox rule, he had

15

sought that relief before I dismissed that case. So I will grant the motion to withdraw, reopen the '533 case, and dismiss it as a sanction for dishonesty.

I will also impose a filing bar: Annamalai is barred from filing any cases in this district for a period of two years. After two years, he may request that the court lift the filing bar. Additionally, because Annamalai has now been sanctioned in multiple federal courts, I will require him to do the following: For any future complaint that Annamalai files in any federal district court, he must attach to it a copy of this order.

No lesser sanction would be appropriate in view of Annamalai's dishonesty in this case and his extensive history of abusive litigation, which includes filing meritless and frivolous habeas petitions and civil rights actions in this court. *See Ayoubi*, 640 F. App'x at 528 ("[D]ismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it . . . ."); *Fuery*, 900 F.3d at 464 ("[T]he appropriateness of lesser sanctions need not be explored if the circumstances justify imposition of the ultimate penalty—dismissal with prejudice."); *see also Annamalai v. Sivanadiyan*, 713 F. App'x 409, 411 (5th Cir. 2018) (noting that Annamalai has been "sanctioned extensively" in federal court for filing "a deluge" of meritless and frivolous actions).

ORDER

IT IS ORDERED that:

1. Petitioner Annamalai Annamalai's amended petition, Dkt. 6, is DENIED on the merits and alternatively DISMISSED as a sanction for dishonesty.

2. Petitioner is sanctioned with a filing bar as set forth in the opinion above.

3. For any future complaint that petitioner files in any federal district court, he must attach to it a copy of this order.

4. Petitioner's emergency motion for status hearing and oral argument with request for docket sheet, Dkt. 48, is DENIED in part as moot and otherwise DENIED.

5. Petitioner's verified motion to amend his emergency motion, Dkt. 51, is GRANTED solely to amend the emergency motion but otherwise DENIED.

6. Petitioner's motion to correct the amended petition, Dkt. 50, is GRANTED.

7. Petitioner's motion to withdraw in case no. 24-cv-533-jdp is GRANTED. The '533 case is to be reopened and DISMISSED with prejudice as a sanction for dishonesty.

8. The clerk of court is directed to enter judgment in this case and the '533 case and to close both cases.

Entered January 30, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge